## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 05-234  (MJD/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Daniel Lee Bacote,** | |
| **Defendants**. | |

___

Andrew S. Dunne, Assistant U.S. Attorney, on behalf of Plaintiff.

Lee R. Johnson, Esq., on behalf of Defendant.
___

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant Daniel Lee Bacote's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 13) and Motion to Suppress Statements and Evidence (Doc. No. 15).  During the criminal motions hearing, counsel for Defendant withdrew Defendant's Motion to Suppress Statements and Evidence (Doc. No. 15).  This matter is set to be tried before the Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota, on November 14, 2005.  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that Defendant's remaining motion to suppress evidence (Doc. No. 13) be denied.

1

## I. PROCEDURAL HISTORY

On July 19, 2005, a one-count indictment was filed charging Defendant Daniel Lee Bacote ("Defendant") with Possession with Intent to Distribute Methamphetamine in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Doc. No. 2). At the criminal motions hearing, Defendant was present and represented by counsel. There was no testimony at the hearing but Government's Exhibit No. 1, the application and supporting affidavit for the search warrant at issue, as well as the search warrant itself, and the receipt and inventory return form, was received into evidence. (See Exhibit List, Ex. 1).

## II. FACTS

On January 21, 2005, Detective Mike Helman submitted an application and supporting affidavit for a search warrant for the premises of a Forestview Lane, N., address in Maple Grove, the person of Daniel Lee Bacote, and any vehicles present. The search warrant included items such as controlled substances, containers, drug paraphernalia, related documents and records, firearms, electronic equipment, profits and proceeds from any narcotics transactions, photographs and videotapes which chronicle drug usage or transactions, as well as the authority to photograph the items listed and answer the telephone while present during the search. (See Ex. 1). Detective Helman was a Maple Grove Police Officer, and was assigned to the Anoka Hennepin Drug Task Force at the time of applying for the search warrant. He has received specialized training in narcotics investigations from the DEA and the BCA, and has conducted numerous investigations involving a variety of criminal activity, including controlled substance investigations. The supporting affidavit to the search warrant application states the facts related to the investigation at issue in this case.

Detective Helman stated in his affidavit that he received information from three different concerned citizens that narcotics activity was taking place at a Forestview Lane address ("Forestview Lane address A") in Maple Grove.  (See Ex. 1).  He was told that people would come and go to the address late in the evening, and stay for short periods of time.  Detective Helman learned through public records that Renee Bacote, Defendant Daniel Bacote's mother, was the owner of that property.  The property listed in the search warrant application, ("Forestview Lane address B"), was also owned by Renee Bacote and was located a few units away.  Detective Helman discovered that Defendant Daniel Lee Bacote was living at the Forestview Lane address B property with his mother.  The concerned citizens were shown a picture of Defendant and identified him as the individual frequenting Forestview Lane address A.  A trash pull of that address revealed cocaine base and marijuana.  Detective Helman found that Daniel Bacote had been arrested and convicted previously for drug related offenses, and had been charged with possession of a firearm in connection with selling narcotics.

Detective Helman then arranged for a confidential informant to purchase narcotics from Daniel Bacote.  The informant was given pre-recorded U.S. currency and an audio device to monitor the transaction.  The informant was searched before and after the transaction.  The informant went to the Defendant's address, knocked on the door, and a man the informant later identified as Daniel Bacote answered.  The informant asked to buy marijuana but was told that only methamphetamine was available.  Daniel Bacote went upstairs and returned with three grams of methamphetamine.  The informant reported that there was $500.00 in cash on the kitchen table.  The informant gave the drugs to Detective Helman and they tested positive for methamphetamine.

Detective Helman requested a nighttime search with unannounced entry to prevent the loss,

destruction, or removal of evidence as most of the activity was reported to have occurred outside the scope of a daytime warrant. Detective Helman stated in his affidavit that he was aware through his training and experience that people involved in the sale and use of controlled substances often arrange for disposal of contraband if forewarned of police presence. Furthermore, a nighttime/unannounced search was necessary for the safety of the officers as Daniel Bacote had a criminal history which included firearms.

The search warrant for Forestview Lane address B was issued on January 21, 2005. On January 25, 2005, the search warrant was executed at the Defendant's residence. Amounts of controlled substances as well as drug paraphernalia were recovered during the search.

### III. DISCUSSION

Defendant Bacote initially moved to suppress the evidence found as a result of the search and seizure, as well as any statements he made. (Doc. Nos. 13 and 15). At the criminal motions hearing Defendant withdrew the motion to suppress statements. (Doc. No. 15). As such, the only remaining issue is Defendant's motion to suppress evidence found as a result of the search warrant. (Doc. No. 13).

Defendant argues that the search warrant lacked probable cause and was stale. More specifically, Defendant argues that any probable cause, that may have existed, had dissipated during the four days between the issuance of the search warrant and its execution. The Government contends that there was adequate probable cause to support the search warrant and the warrant was executed within a sufficient time frame to maintain its validity.

### A. The Search Warrant was supported by adequate probable cause.

A search warrant protects an individual's privacy interest in his or her home and possessions against unjustified police intrusions. Steagald v. United States, 451 U.S. 204, 213 (1981). To satisfy the warrant

requirement, an impartial judicial officer must assess whether the police have probable cause to make an arrest, to conduct a search, or to seize evidence, instrumentalities, fruits of a crime, or contraband. Warden v. Hayden, 387 U.S. 294, 301-02 (1967). Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see United States v. Rankin, 261 F.3d 735, 738-39 (8th Cir. 2002). There is probable cause to issue a search warrant when the affidavit supporting a search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched. United States v. Terry, 305 F.3d 818, 823-24 (8th Cir. 2002). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). "[C]ourts may not look to facts outside the affidavit in determining the existence of probable cause," United States v. Martin, 833 F.2d 752, 757 (8th Cir. 1987) (Lay, C.J., concurring), cert. denied, 494 U.S. 1070 (1990); rather, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999).

Whether probable cause exists depends on the totality of the circumstances. Gates, 462 U.S. at 238; see also United States v. Gabrio, 295 F.3d 880, 882-83 (8th Cir. 2002). A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). Because reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, "preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States

v. Leon, 468 U.S. 897, 913-14 (1984); accord Gates, 462 U.S. at 236-37. In this regard, this Court does not make a de novo review of the sufficiency of the affidavit. Gates, 462 U.S. at 236; accord United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) ("[A] district court should not make a de novo determination of probable cause . . . ."). Rather, "the decision to issue the warrant is to be upheld if supported by substantial evidence in the record," Reivich, 793 F.2d at 959, or, in other words, "so long as the [issuing Judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236. Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983).

The Court is to "ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." Terry, 305 U.S. at 823. Probable cause can be based on information from an independent source that can be independently corroborated. Gates, 462 U.S. at 238; Draper v. United States, 358 U.S. 307, 313 (1959); United States v. Young, 184 F.3d 781, 783 (8th Cir. 1999). Probable cause may also be established by the personal observations, experiences, and training of a police officer or circumstantial evidence. United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002); United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000); United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999). "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). In the end, these considerations "should be understood simply as closely intertwined issues that may

usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed. <u>Gates</u>, 462 U.S. at 230, 236.

This Court finds that, based on the totality of the circumstances and the facts set forth in the supporting affidavits, there was a fair probability that drugs or related evidence of a crime would be found at the Forestview Lane address B listed on the search warrant application. The affidavit explained that there had been reports of possible drug activity from concerned citizens regarding the Forestview Lane address A residence. It was learned that Defendant's mother owned that residence as well as the Forestview Lane address B property nearby, in which Defendant lived. The concerned citizens identified the Defendant as a person who frequented Forestview Lane address A. While the information from the concerned citizens might not have been sufficient to establish probable cause for a search warrant, the information was sufficiently corroborated by Detective Helman's own investigation, observations, and experiences. Information was gathered about Defendant and the investigation through public records and a confidential reliable informant. A trash pull of Forestview Lane address A revealed controlled substances. Defendant had a past history of crime related to controlled substances and firearms. Furthermore, a controlled buy was completed by the confidential informant from the Defendant at Forestview Lane address B, which resulted in the purchase of 3 grams of methamphetamine. Detective Helman, the affiant for the search warrant is a Maple Grove Police Officer and is specifically assigned to the Anoka Hennepin Drug Task Force. He has experience with the investigation of controlled substance law violations.

In this case, examination of the totality of the circumstances and the facts set forth in the supporting

affidavits provides a substantial basis for finding probable cause to support the issuance of the search warrant.

      **B.    The Search Warrant was executed in a timely manner.**

Rule 41(e)(2)(A) of the Federal Rules of Criminal Procedure allows for search warrants to be executed "within a specified time no longer than 10 days" from being issued. Where the affidavit in support of a search warrant sets forth facts that indicate ongoing criminal behavior, the passage of time between gaining information and the execution of the search warrant becomes less important in assessing probable cause. United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992). Similarly, a lapse of time between the issuance of a search warrant and its execution will not cause the probable cause found to become stale as quickly when there is ongoing criminal activity being investigated. United States v. Gibson, 123 F.3d 1121 (8th Cir. 1997) (after informant made controlled buy from defendant's apartment, four day period between issuance and execution of search warrant did not make probable cause stale because information indicated on-going drug activity); see also United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (eight day delay in execution of search warrant based on one-time observation of drugs in defendant's home by informant did not make search warrant stale); United States v. Shegog, 787 F.2d 420, 422 (8th Cir. 1986) (eight day period before execution of search warrant not unreasonable because of continuing activity, and the information in affidavit had not "substantially changed" during the eight days); United States v. Allen, 960 F.2d 1055 (D.C. Cir. 1992) (after ten day delay in execution of a search warrant, "...it was entirely reasonable to assume in the absence of any other interdiction, the house would continue to serve as fixed and secure location for drug sales...").

In this case, the search warrant was issued on January 21, 2005, and executed four days later on

January 25, 2005. Defendant argues that the search warrant became stale due to the four day time delay between it being issued and being executed. This Court disagrees. The search warrant was executed well within the ten day period set forth in Rule 41(e)(2)(A) of the Federal Rules of Criminal Procedure. Furthermore, the information received by Detective Helman and put forth in his affidavit indicated that the possible drug activity was of an on-going nature. Finally, there has been no indication that the information Detective Helman provided in his affidavit had "substantially changed" from when the search warrant was issued to when it was executed, a mere four days later. As such, there is no basis upon which to conclude that the search warrant was stale when it was executed, and Defendant's motion to suppress the evidence found as a result of the search and seizure should be denied.

Finally, even if a search warrant application is later found to lack probable cause, evidence found during its execution need not be suppressed when police obtain the evidence through objective good faith reliance on a facially valid warrant. See Leon, 468 U.S. at 920; see also United States v. Rugh, 968 F.2d at 754. "[E]ven if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed." United States v. Johnson, 219 F3d 790, 791 (8th Cir. 2000) (citing Leon, 468 U.S. at 923).     In the instant case, there is no indication that the issuing judge abandoned his judicial role, that Detective Helman knew of the falsity or was reckless with regard to the truth of anything in his affidavit, that the warrant was facially deficient, or that the warrant was so lacking in probable cause as to render official belief in it unreasonable. See generally Leon, 468 U.S. at 923 (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable

9

cause much less than that exhibited here).

## V.    RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 13) be **DENIED**.

Dated: October 24, 2005                                                                  s/Susan Richard Nelson
                                                                                                          SUSAN RICHARD NELSON
                                                                                                          United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 4, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by (same date as above), 2005 a complete transcript of the hearing. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.