**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Crim. File No. 05-234 (MJD/SRN) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OF LAW & ORDER** |
| **DANIEL LEE BACOTE (1),** | |
| **Defendant.** | |

Andrew S. Dunne, Assistant United States Attorney, counsel for Plaintiff.

Lee R. Johnson, Johnson & Greenberg, PLLP, counsel for Defendant.

The above-entitled matter comes before the Court upon Defendant's objections to the October 24, 2005 Report and Recommendation ("R & R") of United States Magistrate Judge Susan Richard Nelson.

I.     **INTRODUCTION**

Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); D. Minn. L.R. 72.1(c). Based on this Court's review of the record, and for the reasons articulated herein, the Court adopts the part of the R & R addressing the timeliness of the search, and modifies the parts of the

R & R addressing probable cause for the search warrant and the application of the good faith exception under United States v. Leon, 468 U.S. 897 (1984).

## II. BACKGROUND

Judge Nelson's October 24, 2005 R & R recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 13) should be denied. Defendant asks the Court to decline to adopt Judge Nelson's recommendation, and to suppress the evidence seized as a result of the search.

### A.  Relevant Facts

In his affidavit in support of his search warrant application ("the affidavit"), Detective Mike Helman, a Maple Grove police officer who has received specialized training in narcotics investigations and who is assigned to the Hennepin Drug Task Force, stated that the following facts were true.

Helman received information from three different concerned citizens that narcotics activity was occurring at Townhouse A.[1] Specifically, the citizens reported that around 11:00 p.m., people come to the townhouse, stay for short periods of time, and then leave. (Gov. Ex. 1 at 3 ¶ 1.) Helman learned through public records that the owner of Townhouse A, Renee Bacote, also owns another

---

[1] To keep the addresses of the residences involved confidential, the Court will refer to the residences as "Townhouse A" and "Townhouse B."

townhouse in the same complex, Townhouse B. (Id. ¶ 2.) Helman also learned that Defendant lives in Townhouse B, and that Renee Bacote is his mother. (Id. ¶¶ 2, 5.) Helman showed the concerned citizens a picture of Defendant and the citizens identified Defendant as a person who frequents Townhouse A. (Id.) A search of the trash from Townhouse A yielded cocain base and marijuana. (Id.)

Helman conducted a criminal history check of Defendant, and learned that Defendant had been convicted of drug possession in 1991, and had been convicted for selling narcotics in 1988 and 1989. (Id. ¶ 3.) Defendant was charged with possession of a firearm during a 1991 arrest for selling narcotics, and was convicted for possession of cocaine in Utah in 1990. (Id.) In 2003, Defendant was convicted for drug possession. (Id.)

Helman had a confidential informant ("CI") who was known to Helman conduct a drug buy with marked bills from Defendant at Townhouse B. Helman observed the CI approach the townhouse and knock on the door. Defendant answered the door, and the CI told Defendant that he wanted to purchase some marijuana. (Id. ¶ 4.) Defendant informed the CI that he only had "glass," the street name for methamphetamine. (Id.) Defendant then went upstairs and returned with three grams of a substance purported to be methamphetamine. (Id.) The CI returned to Helman and gave him the substance he received from Defendant. (Id.) The substance tested positive for methamphetamine. (Id.) The CI

3

reported to Helman that when he was in Townhouse B, he observed about $500 in cash sitting on Defendant's table. (Id.) At that time, Helman showed the CI a photograph of Defendant, and the CI identified Defendant as the person who answered the door and from whom he received the methamphetamine. (Id.)

Helman requested a no-knock, daytime/nighttime search warrant for Townhouse B. A Minnesota District Court judge signed the warrant on January 21, 2005, and the warrant was executed on January 25, 2005. Evidence was seized during the search. (Id. at 7-8.)

### B. Defendant's Objections

Defendant argues that the evidence seized during the search of Townhouse B must be suppressed because probable cause did not exist to support the search warrant. Defendant further argues that the warrant was so obviously flawed on its face that not even the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984) can save the search.

### III. DISCUSSION

#### A. Whether the Search Warrant Was Issued Upon Probable Cause

A search warrant must only be issued upon probable cause. U.S. Const. amend. IV. Probable cause to issue a search warrant exists when an affidavit sets forth information to justify a prudent person in the belief that contraband will be found in a particular place. See id. Whether probable cause exists is based on a

"practical, common-sense" evaluation of the totality of the circumstances. Id. The issuing judge needs only a substantial basis to believe that probable cause exists. See id. at 238-239 (citation omitted); United States v. Ellison, 793 F.2d 942, 946 (8th Cir. 1986). Moreover, the issuing judge's determination of probable cause should be given considerable deference. Gates, 462 U.S. at 236 (citation omitted); Ellison, 793 F.2d at 946 (citation omitted).

Notwithstanding the above, "[i]t is axiomatic by now that under the fourth amendment, probable cause upon which a valid search warrant must be based must exist at the time at which the warrant was issued, not at some earlier time." United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981) (quotation omitted). When ongoing criminal activity is suspected, the passage of time is less problematic. United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998). "Indeed, in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily make the information stale." Id.

In the R & R, Judge Nelson found that probable cause existed to issue the search warrant because Helman corroborated the information provided by the concerned citizens with his own observations, investigation, and experience. (Doc. No. 29 at 7.) Specifically, Judge Nelson found that Defendant's frequent visits to Townhouse A, the sight of purported drug activity; Defendant's prior history of

5

crimes related to drugs and firearms; the fact that controlled substances were found in the trash of Townhouse A; the fact that a controlled buy had been concluded at Townhouse B; and the possibility that the drug activity was of an ongoing nature, supported the conclusion that probable cause existed to believe that contraband would be found in Townhouse B. (Id. at 7, 9.)

Defendant argues that one drug sale at Townhouse B, without more, does not create probable cause to believe that drug sales were ongoing at that location, and therefore the warrant was issued without probable cause. Defendant notes that none of the concerned citizens stated that they saw suspicious activity at Townhouse B, and that most of Defendant's criminal convictions are over ten years old. Thus, according to Defendant, there was no probable cause to believe that he would be selling drugs in 2005.

The Court finds that probable cause did not exist to issue the search warrant. The affidavit contains no dates explaining when the concerned citizens complained, when the trash from Townhouse A was searched, or when the controlled buy occurred. In fact, the only dates contained in the affidavit are the dates of Defendant's prior criminal activities. Thus, unless the information in the affidavit was combined with "recent, time-specific information . . . [indicating] that the criminal activity described in [the] affidavit is sufficiently close in time to the search warrant application," United States v. Maxim, 55 F.3d 394, 397 (8th

Cir. 1995), the lack of dates is fatal to a finding of probable cause. To that end, the Button court noted the following:

> To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information.

653 F.2d at 325 (quotation omitted). See also United States v. Kennedy, – F.3d – , 2005 WL 2923556, at *3 (8th Cir. Nov. 7, 2005) (affirming suppression of evidence because, among other things, informant provided police officer with "no specific time frame for her knowledge" and therefore probable cause did not exist at the time of the search). In this case, the Court has no idea if the suspicious conduct occurred in January 2005 or if it occurred years ago – the affidavit does not "speak" as to any date at all. Therefore, the Court is unable to even consider whether the warrant can be saved by imputing ongoing drug activity because the Court has no basis upon which to determine the time parameters of the activity.

Moreover, the only evidence specific to Townhouse B indicating ongoing drug activity, rather than a one-time drug sale, is the CI's report that $500 was seen on Defendant's table. However evidence supplied by a CI must be corroborated, at least by a statement that the CI has provided reliable information in the past. United States v. Vinson, 414 F3d 924, 930 (8th Cir. 2005). No such

corroboration appears in the affidavit. Helman only states that the CI is "known to the affiant." (Gov. Ex. 1 at 3.)

More importantly, the affidavit is devoid of any description of Helman's inferences or deductions based on the observed activity. Helman provided no nexus between what he observed and what was reported to him and the possibility that the observed conduct was consistent with criminal activity. See United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002) (search warrant valid in part because officer stated in her affidavit that in her professional experience pedophiles keep contraband in secure locations).

"[T]he Fourth Amendment requires an officer to explain why the officer's knowledge of particular criminal practices give special significance to the apparently innocent facts observed." United States v. Johnson, 171 F.3d 601, 604 (8th Cir. 1999) (citing United States v. Cortez, 449 U.S. 411, 418-22 (1981)) (emphasis in original). Helman failed to provide such an explanation in the affidavit. Therefore, the significance of the money on the table, the amount of drugs in the controlled buy, or any other seemingly innocent behavior, such as a son "frequenting" his mother's home is not established.

Thus, the Court concludes that no probable cause existed to issue the search warrant. Without dates, corroboration, or explanations as to the significance of any certain behaviors or observations, there was no reason for the

issuing judge to conclude that contraband would be found at Townhouse B in January 2005. Accordingly, the Court declines to adopt this part of the R & R.

### B.     Whether the Search was Untimely

In his memorandum in support of his motion to suppress, Defendant argued that the January 25 search was untimely because the information contained in the January 21 warrant application did not give rise to a presumption that contraband would be found at Townhouse B four days later. The Court is unsure if Defendant has abandoned this argument, or if he is raising it again in his objections to the R & R.  In any case, the search was not untimely because it was conducted within the time required by Fed. R. Crim. P. 41(e)(2)(A).  Therefore, this part of the R & R is adopted.

### C.     Whether the Leon Good Faith Exception Applies

Evidence obtained during a search conducted in reliance on a search warrant that is later declared invalid as not based on probable cause, may still be admissible at trial if the officers conducting the search had an objective good faith reliance on the facially invalid warrant. Leon, 468 U.S. at 919. The good faith exception applies when these officers objectively and reasonably rely on the issuing judge's determination of probable cause and on the sufficiency of the warrant. Id. at 922. The Supreme Court recognizes that law enforcement officers "cannot be expected to question the [judge's] probable-cause determination . . . .

'[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" Id. at 921 (quoting Stone v. Powell, 428 U.S. 465, 498 (1976) (Burger, C. J., concurring)) (brackets in original). Suppression of all evidence obtained in reliance on invalid search warrants would effectively punish the officers executing the warrant for the issuing judge's mistakes. Id. at 920.

Therefore, absent extraordinary circumstances, suppression of evidence obtained in a search based on a warrant that was not issued upon probable cause is only required in the following situations: (1) when the affiant knew information in the affidavit was false or would have known it was false but for his reckless disregard for the truth; (2) when the issuing judge wholly abandoned his or her judicial role in issuing the warrant; (3) when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is so facially deficient that officers cannot reasonably presume it to be valid, such as when it fails to specify the place to be searched or the things to be seized. Id. at 923 (citations omitted).

Defendant argues that the affidavit is so lacking in indicia of probable cause that any official belief in its existence is entirely unreasonable. (Def. Obj. R & R at 4.) Specifically, Defendant takes issue with the fact that Helman both drafted the affidavit and executed the search, and cites a slip opinion authored by Judge

Donovan Frank for support. See United States v. Nelson, No. 04-CR-4651 (DWF/JSM), Doc. No. 42, slip op. (D. Minn. June 2, 2005). In United States v. Nelson, Judge Frank concluded that the Leon good faith exception could not save a search conducted pursuant to a facially invalid search warrant. Id. at 7-8. At issue in Nelson was a warrant based on an affidavit that contained no information with respect to the person supplying the affiant with information, and thus there was no way for the court to evaluate the veracity or basis of knowledge of the person supplying the information. Id. at 3. The affidavit contained what amounted to a recitation of the factual allegations against the defendant, who was a resident of the property that was eventually searched. The only independent corroboration of any information was that the affiant discovered that the defendant was not a member of the Mdwakanton Sioux Community, even though he held himself out as the Tribe's chief; and that the defendant received mail at the property that was eventually searched. Nelson, No. 04-CR-4651 (DWF/JSM), Doc. No. 34, R & R at 3-7 (D. Minn. March 18, 2005).

The Nelson court found it especially troubling that all the information regarding the informant and the information the informant provided was vested in the affiant, and the affiant still failed to include such critical information in his affidavit. Nelson, Doc. No. 42 at 4. Judge Frank concluded that as an experienced public safety officer, the affiant should have known that an affidavit containing

merely conclusory statements without identifying the basis of knowledge would not suffice, and that allowing the evidence gathered in the search would only "sanction the preparation and use of such deficient affidavits." Id. at 7-8.

Although the affidavit in this case provides more information than the affidavit in Nelson, that information does not save the search. Just as a judge could not determine whether the information in the affidavit was timely, neither could the executing officers. Moreover, there is no nexus between the single controlled buy of a small amount of methamphetamine, and the likelihood that there was ongoing criminal activity at Townhouse B. An uncorroborated report that money was seen on a table, without more, does not make reliance reasonable. The affidavit provides evidence that contraband would likely be found at Townhouse A, but does not provide evidence that contraband would likely be found at Townhouse B. To that end, the Court agrees with the Nelson court – admitting evidence gathered based on this sketchy affidavit would amount to sanctioning the use of deficient affidavits. A person's privacy interest in his home should not be compromised based on such an inadequate showing. Accordingly, the Court modifies this part of the R & R, and Defendant's motion is therefore granted.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1)     Magistrate Judge Nelson's October 24, 2005 Report and Recommendation [Doc. No. 29] is **ADOPTED IN PART and MODIFIED IN PART** as set forth in this memorandum; and

(2)     Defendant's Motion to Suppress Evidence Obtained as a Result of Search Seizure [Doc. No. 13] is **GRANTED**.

Dated: November 22, 2005

                                                   s/ Michael J. Davis
                                                   Michael J. Davis
                                                   United States District Court